**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**
*Southern Division*

| | |
|---|---|
| **JEFFREY STODDARD** | * |
| Plaintiff, | * |
| v. | * |
| | Civil No.: PWG-20-2164 |
| **SUBARU OF AMERICA, INC. et al.,** | * |
| Defendants. | * |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION**

This case involves an automobile accident that occurred when plaintiff Jeffrey Stoddard allegedly struck a deer while driving a 2018 Subaru Outback that he rented from defendant Overland West, Inc. ("Overland") in Duluth, Minnesota. Stoddard alleges that the rental car was equipped with Takata airbags that deployed when they should not have, causing him injury. In addition to Overland, Stoddard names as defendants Subaru Corporation, Subaru of America, Inc., Subaru of Indiana Automotive, Inc., and The Hertz Corporation. Pending is Overland's motion to dismiss the claims against it for lack of personal jurisdiction.[1] Stoddard mainly argues that this Court has personal jurisdiction over Overland because he used the Hertz website in Maryland to book his rental car with Overland. For the reasons discussed below, Overland lacks sufficient contacts with Maryland for this Court to exercise personal jurisdiction over it. Therefore, Overland's motion to dismiss is granted and Stoddard's claims against Overland are dismissed

---

[1] The motion is fully briefed. *See* ECF Nos. 37 (Motion to Dismiss), 39 (Opposition). Overland has not filed a reply, and the time to do so has passed. *See* ECF No. 36. A hearing is not necessary. *See* Loc. R. 105.6 (D. Md. 2021).

without prejudice, unless Stoddard requests that I transfer his claims against Overland to the United States District Court for the District of Minnesota.

## BACKGROUND

The alleged facts of this case are straightforward. Stoddard is a Maryland resident. ECF No. 45 (Amended Complaint), ¶ 1.[2] On May 23, 2018, Stoddard rented a 2018 Subaru Outback in Duluth, Minnesota from a Hertz vehicle rental location operated by Overland. *Id.* ¶¶ 4, 7. While driving the rental vehicle, Stoddard struck a deer.[3] *Id.* ¶ 9. During the collision, the rental vehicle's airbags, manufactured by Takata, deployed and injured Stoddard's hand. *Id.* ¶ 10. Stoddard alleges that Overland knew, should have known, or was recklessly indifferent to the fact that the vehicle it rented to him contained Takata air bags and that Takata air bags expose the user of a vehicle to a risk of bodily harm. *Id.* ¶ 15. Stoddard brings claims for negligence and for violation of the Maryland Consumer Protection Act. *Id.* ¶¶ 19–35.

With respect to this Court's jurisdiction, Stoddard alleges that Overland is a car rental and sales company that operates within the United States of America and that it licenses the Hertz name and operates as an independent franchisee of Hertz within the State of Minnesota. *Id.* ¶ 4. In a sworn declaration attached to his opposition to Overland's motion to dismiss, Stoddard states that he reserved the rental vehicle online on May 18, 2018 through Hertz's website. ECF No. 39, Stoddard Declaration. The rental office in Duluth, Minnesota where he picked up the vehicle, which he later understood to be operated by Overland, was "adorned with the Hertz name and

---

[2] Stoddard filed his Amended Complaint after Overland filed its motion to dismiss. However, the Amended Complaint did not amend any allegations regarding this Court's personal jurisdiction over Overland.
[3] The Amended Complaint does not specify where the accident took place. In his opposition to Overland's motion to dismiss, Stoddard states that the accident took place in Wisconsin. Pl. Opp. at 1.

appeared to be in every way to be a Hertz rental vehicle location." *Id*. The vehicle paperwork and contract included both the Hertz name and Overland's name. *Id.* Nonetheless, Stoddard says that he first became aware of Overland when the company sent him correspondence to his home address in Maryland seeking reimbursement for the damage to the rental vehicle. *Id.* He says that he also spoke with representatives of Overland while at home in Maryland regarding this case. *Id.*

In a sworn declaration attached to Overland's motion to dismiss, the Manager of Rental Operations for Overland, Ms. Barbara Lam-Hales, states that Overland is incorporated in Utah and maintains its headquarters and principle place of business in Utah. ECF No. 37-2 (Lam-Hales Declaration). Overland has sales facilities in Utah, Montana, and Idaho, and rental facilities in Wyoming, Washington, Idaho, Minnesota, Montana, South Dakota, and North Dakota. *Id.* Overland is not registered in Maryland and has no charter or license to do business in Maryland. *Id.* Overland owns and leases no property in Maryland, has no offices or employees in Maryland, and conducts no business in Maryland. *Id.* Overland is a licensee/franchisee of Hertz and the two companies are independent entities. *Id.*

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(2) governs motions to dismiss for lack of personal jurisdiction. When a defendant challenges a court's personal jurisdiction, the jurisdictional question "is to be resolved by the judge, with the burden on the plaintiff ultimately to prove grounds for jurisdiction by a preponderance of the evidence." *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003). If the Court considers the complaint and the parties' motions and affidavits but does not conduct an evidentiary hearing, then "'the burden on the plaintiff is simply to make a prima facie showing of a sufficient jurisdictional basis in order to survive the jurisdictional challenge.'" *In re Celotex Corp.*, 124 F.3d 619, 628 (4th Cir. 1997)

(quoting *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989)); *see also Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 276 (4th Cir. 2009)). In taking this approach, a court "must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." *Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 62 (4th Cir. 1993).

## ANALYSIS

Under Federal Rule of Civil Procedure 4(k)(1)(A), a federal court may exercise personal jurisdiction over a defendant who is subject to the jurisdiction in the state where the federal court is located. *See* Fed. R. Civ. P. 4(k)(1)(A); *Carefirst*, 334 F.3d at 396. For this Court to exercise personal jurisdiction over Overland, a nonresident defendant, two conditions must be satisfied: "(1) the exercise of jurisdiction must be authorized under [Maryland's] long-arm statute; and (2) the exercise of jurisdiction must comport with the due process requirements of the Fourteenth Amendment." *Carefirst*, 334 F.3d at 396.

This Court must follow the binding interpretation of Maryland's long-arm statute by the Maryland Court of Appeals, which has consistently held that the state's long-arm statute is coextensive with the limits of personal jurisdiction set by the due process clause of the Constitution. *Carefirst*, 334 F.3d at 396 (citing *Mohamed v. Michael*, 370 A.2d 551, 553 (1977)). Therefore, the statutory inquiry merges with the constitutional inquiry. *Id.* at 396–97. Nonetheless, under Maryland law, the Court should conduct the analysis under both. *See Mackey v. Compass Mktg., Inc.*, 892 A.2d 479 n.6 (2006).

    a. **Maryland Long Arm Statute**

Maryland's long-arm statute is codified at Md. Code § 6–103(b) of the Courts & Judicial Proceedings Article. It authorizes "personal jurisdiction over a person, who directly or by an agent":

> (1) Transacts any business or performs any character of work or service in the State;
>
> (2) Contracts to supply goods, food, services, or manufactured products in the State;
>
> (3) Causes tortious injury in the State by an act or omission in the State;
>
> (4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from goods, food, services, or manufactured products used or consumed in the State;
>
> (5) Has an interest in, uses, or possesses real property in the State; or
>
> (6) Contracts to insure or act as surety for, or on, any person, property, risk, contract, obligation, or agreement located, executed, or to be performed within the State at the time the contract is made, unless the parties otherwise provide in writing.

*Id.* In his opposition to Overland's motion to dismiss, Stoddard points to Md. Code § 6–103(b)(1) and (2) – regarding transacting business in Maryland or contracting to supply goods and services in Maryland – as the bases for personal jurisdiction. Pl. Opp. 4. Stoddard also cites to § 6–103(c)(2), which states, "The provisions of this section apply to computer information and computer programs in the same manner as they apply to goods and services." Stoddard argues that Overland falls within the scope of these provisions, because he used the Hertz website in Maryland to book his rental vehicle with Overland, a Hertz franchisee.

In *Rao v. ERA Alaska Airlines*, 22 F. Supp. 3d 529 (D. Md. 2014), the undersigned considered similar allegations. In that case, a plaintiff purchased an airline ticket online in Maryland for a defendant airline that operated solely in Alaska. *Rao v. Era Alaska Airlines*, 22 F. Supp. at 540. As here, the plaintiff argued that this Court had personal jurisdiction under Md.

5

Code § 6–103(b)(1) and (2) as a result of making the reservation online. I explained that Md. Code § 6–103(b)(2) could not be a basis for personal jurisdiction, because it only applies to contracts for goods and services "in the State." *Id.* at 535. In other words, "'the language of section 6–103(b)(2) cannot be read as extending to any contract *negotiated* in Maryland.'" *Id.* (quoting *A Love of Food I, LLC v. Maoz Vegetarian USA, Inc.,* 795 F. Supp. 2d 365, 370 (D.Md. 2011) (emphasis added in *Rao*)). Rather, "[i]t covers only contracts to supply goods and services *in* Maryland, irrespective of where the contract was negotiated." *Id.* The same is true here. Assuming, without deciding, that by booking his rental vehicle online in Maryland, Stoddard entered into a contract with Overland in Maryland, it is undisputed that the vehicle was rented in Minnesota, not Maryland, and therefore long-arm jurisdiction does not arise under § 6–103(b)(2).

In *Rao v. Era Alaska Airlines*, I noted that the application of § 6–103(b)(1) presented a thornier issue. In that case, the plaintiff's cause of action did not arise out of the ticket sale itself, but rather events that took place in Alaska. *Id.* at 536. The same is true here: Stoddard's claims arise of out events that took place when he obtained the rental vehicle in Minnesota and drove to Wisconsin, not his online reservation in Maryland. Therefore, it is not clear whether Overland's rental of the vehicle to Stoddard in Minnesota constitutes "transact[ing] any business" in Maryland by virtue of his reservation here. *See id.* In *Rao v. Era Alaska Airlines*, I explained that because the Maryland long-arm statute is coextensive with the due process clause, if the contacts alleged by plaintiff were sufficient to satisfy due process, they likely would satisfy the Maryland long-arm statute as well, assuming that the plaintiff's claim arose out of a transaction in Maryland. *Id.* at 536. I take the same approach here and turn next to the due process analysis.

    b. **Due Process**

The personal jurisdiction constitutional inquiry is a familiar one: "A court's exercise of jurisdiction over a nonresident defendant comports with due process if the defendant has 'minimum contacts' with the forum, such that to require the defendant to defend its interests in that state 'does not offend traditional notions of fair play and substantial justice.'" *Carefirst*, 334 F.3d at 397 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945)).

Personal jurisdiction may be specific or general, depending on the nature of the defendant's contacts with the forum state. *Id.* Specific personal jurisdiction arises when the defendant's contacts with the forum state also provide the basis for the suit. *Id.* General personal jurisdiction arises if the defendant's contacts with the state do not form the basis for the suit, but are "continuous and systematic." *Id.* (citing *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir. 2002); *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 & n. 9 (1984)). I will discuss each basis for personal jurisdiction in turn.

i. **Specific Personal Jurisdiction**

Plaintiff argues that this Court has specific personal jurisdiction over Overland. Pl. Opp. at 6. To determine whether specific personal jurisdiction exists, the Court considers (1) the extent to which the defendant has purposefully availed itself of the privilege of conducting activities in the state; (2) whether the plaintiffs' claims arise out of those activities directed at the state; and (3) whether the exercise of personal jurisdiction would be constitutionally 'reasonable.'" *Id.* (citing *ALS Scan,* 293 F.3d at 711–12; *Helicopteros*, 466 U.S. 414 & n.8). Stoddard's main argument to support personal jurisdiction over Overland is that he booked his rental vehicle online while in the state of Maryland using the Hertz website. Specifically, Stoddard argues that "[b]y enabling a customer in any state to transact business online to book and reserve a Hertz rental vehicle in Minnesota, Overland has purposely availed itself of the privileges of conducting business in

7

Maryland." Pl. Opp. at 6. As Fourth Circuit precedent and prior decisions of this Court show, however, these allegations are not enough to establish personal jurisdiction.

To begin, in an influential decision regarding personal jurisdiction in the internet-era, *Zippo Manufacturing Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119 (W.D.Pa. 1997), Judge McClaughlin of the Western District of Pennsylvania used a "sliding scale" to categorize whether internet-based activities gave rise to personal jurisdiction. On one side of the scale were "passive" websites that simply allowed a user to access information over the internet from a foreign jurisdiction, which do not give rise to personal jurisdiction in the foreign jurisdiction. *Zippo Manufacturing*, 952 F. Supp. 1124. On the other side of the scale were "interactive" websites, through which a defendant "enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the internet," which do give rise to personal jurisdiction in the foreign jurisdiction. *Id.* Between these two are "semi-interactive" websites, which may give rise to personal jurisdiction in a foreign jurisdiction, "depending on the level of interactivity and commercial nature of the exchange of information that occurs." *Id.* In *Zippo Manufacturing*, Judge McClaughlin found that the defendant, which operated an online news service that entered into contracts with, and collected information and payment from, thousands of individuals in the plaintiff's home state was properly subject to the court's personal jurisdiction in that state. *Id.* at 1126.

In *ALS Scan*, the Fourth Circuit expressly "adopt[ed] and adapt[ed]" the *Zippo* model for analyzing personal jurisdiction based on internet activities. *ALS Scan*, 293 F.3d at 714. The Fourth Circuit concluded that "a State may, consistent with due process, exercise judicial power over a person outside of the State when that person (1) directs electronic activity into the State, (2) with the manifested intent of engaging in business or other interactions within the State, and (3) that

activity creates, in a person within the State, a potential cause of action cognizable in the State's courts." *Id.* Therefore, with respect to Maryland claims, "specific jurisdiction in the Internet context may be based only on an out-of-state person's Internet activity directed at Maryland and causing injury that gives rise to a potential claim cognizable in Maryland." *Id.* In *ALS Scan*, the Fourth Circuit held that Maryland could not exercise personal jurisdiction over an out-of-state internet service provider that hosted a website that was accessible in Maryland, finding this to be at most a "passive" activity. *Id.* at 714–15.

In *Young v. New Haven Advocate*, the Fourth Circuit built on the *ALS Scan* decision and held that there was not personal jurisdiction in Virginia over newspapers in Connecticut in a defamation suit arising out of statements made about a Virginia prison warden. *Young v. New Haven Advoc.*, 315 F.3d 256, 263–64 (4th Cir. 2002). Although the content was available online, the Fourth Circuit found that the newspapers had not manifested an intent to direct their website content to Virginia, and therefore the defendants' internet activity was insufficient to establish personal jurisdiction in Virginia. *Id.*

In *Carefirst*, the Fourth Circuit again considered personal jurisdiction based on internet activities. *Carefirst*, 334 F.3d 390 (4th Cir. 2003). In that case, the plaintiff, Carefirst of Maryland, a healthcare insurance company headquartered in Maryland, brought trademark claims against the defendant, Carefirst Pregnancy Centers ("CPC") in this Court. CPC, a pro-life advocacy organization based in Chicago, Illinois, operated several domain names that included "carefirst" as part of the name, such as www.carefirstpc.org. The Fourth Circuit reasoned that, "in order for CPC's website to bring CPC within the jurisdiction of the Maryland courts, the company must have done something more than merely place information on the Internet." *Id.* at 400. Instead, "CPC must have acted with the 'manifest intent' of targeting Marylanders." *Id.* (citing *Young v. New*

9

*Haven Advocate*, 315 F.3d at 264).  The Fourth Circuit examined the character of the website to determine whether CPC intended to target Marylanders.  In doing so, the Fourth Circuit found that the website was "semi-interactive."  *Id*.  However, unlike the *Zippo* defendant that was "doing business over the Internet" with residents of the forum state and entered into contracts with over 3,000 individuals in the forum state and seven internet access providers in the forum state, the only evidence of an online exchange between CPC and Maryland was a single website donation by Carefirst's counsel (likely made to bolster his client's position regarding personal jurisdiction).  *Id.* at 401.  In addition, the Fourth Circuit noted the content of the CPC website was local in nature, focused on the Chicago-area.  Thus, the Fourth Circuit held that the CPC website failed to furnish Maryland contact adequate to support personal jurisdiction over CPC in Maryland.  *Id.*

In an earlier decision, *ESAB Group v. Centricut, Inc.*, the Fourth Circuit held that a company's sales activities "focusing generally on customers located throughout the United States and Canada without focusing on and targeting" South Carolina, the forum state, did not confer personal jurisdiction over the defendant.  *ESAB Grp., Inc. v. Centricut, Inc.*, 126 F.3d 617, 625 (4th Cir. 1997); *see also Carefirst*, 334 F.3d at 401 (describing this holding from *ESAB*).  In that case, the defendant manufactured and sold replacement parts for cutting machines and conducted its business entirely through mail order.  *ESAB Grp., Inc. v. Centricut, Inc.*, 126 F.3d at 621.  It did not have any offices, representatives, property, or phone listings in South Carolina.  *Id.*  The defendant claimed that it never targeted formal advertising at South Carolina and no employee had ever traveled to South Carolina for any purpose.  *Id.*  It had 26 customers in South Carolina, constituting 1% of its customers and .079% of its gross annual sales.  *Id.*  The Fourth Circuit found that these contacts were insufficient to justify general personal jurisdiction.  *Id.* at 624.  Likewise, the Fourth Circuit found that there was not specific jurisdiction based on allegations that the

plaintiff lost customers in South Carolina because of the defendants alleged tortious conduct, where South Carolina customers were not specifically targeted.  *Id.* at 625.

Returning to *Rao v. ERA Alaska Airlines*, after analyzing the Fourth Circuit precedent discussed above, I observed that "the Fourth Circuit has been notably reluctant to extend personal jurisdiction to out-of-state defendants based on little more than their presence on the Internet" and that "[t]he mere fact that information can be accessed from within the forum state does not subject the defendant to that state's jurisdiction."  *Id.* at 539 (citing *ALS Scan*, 293 F.3d at 715; *Young*, 315 F.3d at 263; *Carefirst*, 334 F.3d at 401).  In that case, the plaintiff booked a flight with defendant Era Alaska Airlines that had its origin and destination in Alaska through the website www.expedia.com.  *Rao v. Era Alaska Airlines*, 22 F. Supp. 3d at 536.  Era made its flights available on www.expedia.com through a global distribution system company called Sabre.  *Id.*  Era also had an internet presence that included a website, Facebook account, and a Twitter account, and placed advertisements on the websites for two Alaskan newspapers.  *Id.*  Era did not target advertising outside of Alaska and did not operate flights outside of Alaska.  *Id.*  Therefore, I held that notwithstanding the fact that Era made its flights available online and that the plaintiffs purchased their flight online while in Maryland, plaintiffs failed to meet their burden to show or allege sufficient facts Era manifested an intent to engage in business in Maryland.  *Id.* at 539–40.

Similar to the plaintiff in *Rao v. Era Alaska Airlines*, Stoddard alleges that he reserved his rental vehicle online, but fails to show or allege other facts to support the conclusion that Overland "direct[ed] electronic activity into" Maryland or "manifested an intent of engaging in business or other interactions" within Maryland.  *ALS Scan, Inc.*, 293 F.3d at 714.  To the contrary, Plaintiff neither alleges nor shows anything to demonstrate that Overland targeted Maryland in any way, except for the use of the Hertz website to complete bookings.  Without more, the fact that Stoddard

11

reserved his rental on the Hertz website, which is available throughout the United States, "without focusing on and targeting" Maryland, does not confer personal jurisdiction over Overland in Maryland. *ESAB Grp., Inc. v. Centricut, Inc.*, 126 F.3d at 625.

In his brief in opposition to Overland's motion to dismiss, Stoddard offers several additional arguments in favor of personal jurisdiction. First, Stoddard argues that because he is a Maryland resident and was so when he rented the vehicle, there is a connection to Maryland. Even so, this argument ignores the requirement that *Overland* must have *targeted* Maryland in some way. *See ALS Scan, Inc.*, 293 F.3d at 714.

Second, Stoddard points to the fact that Overland is a Hertz franchisee and emphasizes that to the general public, and in Stoddard's experience, it appears that they are the same. But as the Amended Complaint acknowledges, and the Lam-Hales declaration confirms, Overland is an independent franchisee of Hertz with a separate corporate form. Am. Compl. 4; Lam-Hales Declaration, ECF No. 37-2. Overland's use of the Hertz logo and branding is not sufficient to disregard their corporate separateness. *See Price v. Waste Mgmt., Inc.*, No. ELH-13-02535, 2014 WL 1764722, at *12 (D. Md. Apr. 30, 2014) (collecting cases and holding that use of the same logo by subsidiary and parent corporations was not sufficient to support exercise of personal jurisdiction). To the extent Stoddard asks this Court to disregard Overland and Hertz's separate corporate forms, "[u]nder Maryland law, a court may pierce the corporate veil only to prevent fraud or enforce a paramount equity." *Baltimore Line Handling Co. v. Brophy*, 771 F. Supp. 2d 531, 552–53 (D. Md. 2011). Here there are no allegations of fraud or to invoke a paramount equity. Hertz is a defendant in this case and Stoddard may bring his claims against Overland in a court that properly can exercise personal jurisdiction over it.

Finally, Stoddard argues that Overland caused him to be contacted by mail and telephone at his home in Maryland for reimbursement for the cost of the damage to the rental vehicle, and that this should subject it to personal jurisdiction in Maryland. Pl. Opp. at 5. However, these phone calls and letters are insufficient to establish personal jurisdiction in Maryland. *See Pharmabiodevice Consulting, LLC v. Evans*, No. GJH-14-00732, 2014 WL 3741692, at *4 (D. Md. July 28, 2014) (collecting cases and holding "isolated telephone calls and e-mails made from outside Maryland into the state" insufficient to establish personal jurisdiction).

### ii. General Personal Jurisdiction

To the extent that Stoddard argues this Court has general personal jurisdiction over Overland, this argument also fails. "To establish general jurisdiction over the defendant, the defendant's activities in the State must have been 'continuous and systematic,' a more demanding standard than is necessary for establishing specific jurisdiction." *ALS Scan*, 293 F.3d at 712 (citing *Helicopteros*, 466 U.S. at 414 & n.9; *ESAB Group*, 126 F.3d at 623.) As described above, Stoddard fails to show that Overland directed any activities to the State of Maryland. To the contrary, the record shows that Overland does not have any rental facilities in Maryland, is not registered in Maryland, owns and leases no property in Maryland, has no offices or employees in Maryland, and conducts no business in Maryland. Lam-Hales Declaration, ECF No. 37-2. Stoddard does not show or allege otherwise. Therefore, this Court lacks general personal jurisdiction over Overland.

### CONCLUSION

Stoddard fails to meet his burden to make a prima facie showing that this Court has personal jurisdiction over Overland. Stoddard's primary argument in favor of personal jurisdiction is that he booked his rental car with Overland through the Hertz website in Maryland. This, however, is not enough for the Court to exercise personal jurisdiction over Overland. Stoddard's additional

arguments fail to save his claim before this Court. As I noted in *Rao v. Era Alaska Airlines*, "even if there may be circumstances in which a defendant in Era's position *could* be subject to jurisdiction in Maryland, Plaintiff has failed to satisfy its burden to show or allege sufficient facts here." *Rao v. Era Alaska Airlines*, 22 F. Supp. 3d at 540 (citing *Combs v. Bakker,* 886 F.2d at 676). The same is true here, particularly since Stoddard had an opportunity to file an amended complaint (and later did) and provided declarations in support of personal jurisdiction in full view of Overland's arguments for dismissal. *See* ECF No. 34 (Overland's pre-motion letter explaining its arguments for dismissal). Therefore, Overland's motion to dismiss for lack of personal jurisdiction is granted and Stoddard's claims against Overland must be dismissed without prejudice from this Court. However, given that it appears from the filings that Stoddard rented his vehicle from Overland in Minnesota, and that personal jurisdiction against Overland lies in that state, I will delay the entry of the order of dismissal, without prejudice, until Stoddard has had an opportunity to request that, instead of dismissal, I should transfer his claims against Overland to the United States District Court for the District of Minnesota. Any such request shall be filed not later than August 27, 2021. In the absence of such a request by that date, I will enter the order dismissing this case, without prejudice, for want of jurisdiction.

   August 6, 2021                                                        /S/
Date                                                                           Paul W. Grimm
                                                                                United States District Judge