IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **JEFFREY STODDARD,** | * | |
| Plaintiff, | * | |
| v. | * | Civ. No. DLB-20-2164 |
| **SUBARU OF AMERICA, INC.,** *et al.*, | * | |
| Defendants. | * | |

**MEMORANDUM OPINION**

In this personal injury lawsuit, Jeffrey Stoddard sues Subaru of America, Inc., Subaru Corporation f/k/a Fuji Heavy Industries, Ltd., Subaru of Indiana Automotive, Inc. (collectively, "Subaru" or the "the Subaru defendants"), and the Hertz Corporation ("Hertz") for damages resulting from injuries that he sustained to his left hand after the deployment of airbags in a Subaru Outback he had rented from Hertz, a national car rental company. Stoddard claims the Subaru defendants were negligent in the design or manufacture of the airbag system and for failing to warn him of the risks posed by the airbag system. He also claims the Subaru defendants engaged in unfair or deceptive trade practices in violation of the Maryland Consumer Protection Act, Md. Code Ann., Com. Law §§ 13-101 *et seq.* ("MCPA").

Pending before the Court are Subaru's motions to exclude Stoddard's proposed expert witness and for summary judgment. ECF 71 & 72. The motions are fully briefed. ECF 73–76. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). For the following reasons, the motion for summary judgment is granted, and the motion to exclude is denied as moot.

I.     **Background**

   A.  **Procedural History**

Stoddard filed suit against Subaru of America and Hertz in Montgomery County Circuit Court on May 15, 2020.  The defendants removed the case to this Court on July 24 on the basis of diversity jurisdiction.  After Subaru of America filed an answer to the complaint, Hertz filed a notice of bankruptcy, and the Court stayed the case as to Hertz.  ECF 22 & 28.  Stoddard filed an amended complaint, adding Overland West as a defendant.  ECF 31.  Overland West filed a motion to dismiss based on the absence of personal jurisdiction, which the Court granted.  ECF 37, 57 & 62. While Overland West's motion was pending, Stoddard filed a second amended complaint, adding Subaru Corporation and Subaru of Indiana.  ECF 45.  Following discovery, the Subaru defendants filed the pending motions to exclude expert witness testimony and for summary judgment.  ECF 71 & 72.

   B.  **The Facts**

The following facts from the record are not in dispute unless noted otherwise.  In 2018, Stoddard was a resident of Maryland who owned property in Wisconsin.  He travelled to Wisconsin several times a year.  When he would fly in, he would rent a vehicle after he arrived.  In May 2018, Stoddard searched online and found a Hertz location at the airport in Duluth, Minnesota.  The location was operated by an independent Hertz licensee, Overland West, Inc.  Stoddard reserved a vehicle directly from Hertz for pickup at the airport location on May 23.

On May 23, Stoddard arrived in Duluth after a late flight and picked up a 2018 Subaru Outback from Hertz.  The following night, he was driving the Outback in Wisconsin when he struck a deer while travelling at approximately 50 mph.  The deer had crossed in front of the vehicle from the right before being struck by the front left portion of the Outback.  The collision caused

the airbags to deploy, seriously injuring Stoddard's left hand and thumb. Stoddard drove himself to the local emergency room and received treatment for his injuries, which included a nondisplaced fracture of the left proximal phalanx of the left thumb, laceration of the left thumb with damage to the nail, and a left wrist sprain. As a result of his injuries, Stoddard underwent surgery, and his thumb now has a permanent functional impairment and deformity. After the accident, Stoddard returned the Outback to the rental location, and it later was repaired and sold.

At his deposition, Stoddard said he asked about the pricing and availability of different types of vehicles when he made his reservation with Hertz. ECF 72-4, at 11–12. He said he considered the type of vehicle he wanted, the duration he expected to use it, and the price. *Id.* at 12. He admitted that he did not request a Subaru or any other specific vehicle and he did not know he would be picking up a Subaru Outback. *Id.* When he arrived at the rental location, there was "a very limited choice, and the Hertz person at the counter essentially assigned [him his] vehicle . . . ." *Id.* Stoddard had not seen any advertisements for the 2018 Subaru Outback, and he did not review the vehicle's owner manual. *Id.* at 12, 42. In response to the Subaru defendants' motions, he submitted an affidavit stating he would not have rented the Outback if he had known it would deploy its airbags in a minor collision of the kind he experienced. ECF 74-2, ¶ 8.

**C. Expert Witnesses**

Stoddard has identified one expert witness, John Yannaccone. Yannaccone is a licensed professional engineer and a member of the Society of Automotive Engineers and the Association for the Advancement of Automotive Medicine. ECF 71-1, at 2. He has a B.S. in Mechanical Engineering and 30 years of experience in the research, development, testing, and simulation of occupant restraints, seats, and crash protection systems. *Id.* His experience with automobile airbag deployment thresholds is more limited; he has reviewed deployment threshold information in

several lawsuits but has not consulted with any automobile manufacturer on airbag deployment thresholds. ECF 71-3, at 25–26. In preparing his opinions for this case, he reviewed an accident report, photos of the vehicle, the vehicle's manual, Stoddard's pleading and discovery responses, a damage appraisal for the vehicle, and miscellaneous other documents. ECF 71-1, at 16. He did not review the Subaru defendants' discovery responses, including any information about the airbag system or crash test information for the 2018 Outback, because those documents had not been provided when he prepared his report. *Id.* at 3, 6.

Yannaccone's report focused on the severity of the crash and the need for an airbag deployment based on his estimation of the risk posed to occupants. Because the vehicle component that would have stored crash information was unavailable, he used a series of physics equations to estimate the force the deer applied to the Outback. *Id.* at 4–6. He estimated the decrease in the Outback's velocity (delta-V) would have been less than two percent of its initial velocity, or less than two miles per hour. *Id.* at 6.[1] He opined such a small change would be "insufficient for the occupant to need the airbags to deploy and well below the severity where one would expect an occupant to be injured." *Id.* He then compared his assessment of the collision with publicly available crash information for the Outback, all of which involved different model years and much more serious collisions. *Id.* at 6–9.

Yannaccone explained that airbag deployment poses a risk to occupants and that risk needs to be balanced against the risk posed by collisions. *Id.* at 9, 12. He noted the 2018 Outback manual stated the airbag system was designed to deploy during collisions of a magnitude similar to a 12- to 19-mile-per-hour impact against a thick concrete wall. *Id.* at 10. He stated he could not

---

[1] At his deposition, Yannaccone stated he did not calculate the severity of the crash, but rather "placed some brackets on it based on the known information." ECF 71-3, at 24.

4

comment on the design aspects of the 2018 Outback's airbag system or whether deployment should have occurred during the deer impact (other than noting deployment seemed inconsistent with the threshold stated in the manual) because he did not have information about the Outback's airbag system's design, its deployment criteria or algorithm, or the vehicle's particular components. *Id.* at 11–12; *see* ECF 71-3, at 29 (stating airbag deployment during a minor collision of this sort would seem to indicate a design defect but confirming he cannot render that opinion to a reasonable degree of engineering certainty).

> Yannaccone summarized his conclusions about the severity of the crash:
>
> The forces of the collision with the deer would have resulted in low accelerations of the Outback which would be well within the protectable range for a restrained driver of Dr. Stoddard's size. Given the low crash severity, there was no need for deployment of the airbags to protect Dr. Stoddard. . . . There is no available evidence or information to suggest the conditions experienced during the collision with the deer would warrant airbag nor is there evidence to indicate this collision was similar to the 12 to 19 mile per hour impact with a wall Subaru tells consumers is needed for the frontal airbags to deploy.

ECF 71-1, at 13. But he was clear that he was unable "to conduct a complete engineering analysis of the incident" and could not rule out the possibility of a "malfunction, manufacturing defect, design defect or some combination of these factors." *Id.* at 14; *see* ECF 71-3, at 30, 33–34.

The Subaru defendants have identified two expert witnesses. Dr. Jennifer Yaek is an experienced engineer who specializes in accident reconstruction. ECF 71-5, at 24. She has a B.S. and an M.S. in Mechanical Engineering and an M.S. and Ph.D. in Biomedical Engineering. *Id.* She has 25 years of experience in accident reconstruction and vehicle dynamics, and she has provided expertise in the areas of human injury tolerance, occupant kinematics, and rigid body dynamics associated with transportation-related impacts. *Id.* Karen Balavich is an experienced automotive engineer who specializes in vehicle restrain systems and crashworthiness. ECF 71-4, at 38. She has a B.S. in Mechanical Engineering and over 20 years of experience in automotive

5

engineering. *Id.* at 2–3. She has expertise in designing, developing, and implementing occupant protection safety systems that align with industry standards. *Id.* at 38.

Dr. Yaek reviewed damage reports for the Outback, photos of the vehicle, the parties' pleadings and discovery responses, Yannaccone's report, Stoddard's deposition testimony, vehicle specifications for the 2018 Outback, exemplar vehicle inspection photographs, and the vehicle itself. ECF 71-5, at 3. Dr. Yaek's report, like Yannaccone's report, addressed the severity of the crash. She assessed the damage to the Outback based on photos and a damage report. *Id.* at 4–9. She located the vehicle and confirmed its airbag control module had been replaced during post-accident repairs and contained no useful data. *Id.* at 11. She then used physics equations to calculate the delta-V following the impact, estimating it to have been 1.5 to 2.8 miles per hour. *Id.* at 15. Based on that figure and the assumed size of the deer, she estimated the average deceleration experienced by the vehicle at its center of gravity to have been 2.3 to 7.1 g over 0.016 to 0.029 seconds. *Id.*[2] She further concluded, based on the use of surrogate drivers in an exemplar vehicle, that Stoddard's injuries were likely the result of his hand position, "with his left hand on the spoke or at the 9:00 position with the thumb extended across the spoke[.]" *Id.* at 22. Finally, she stated Stoddard's injuries are all designated minor injuries by the Abbreviated Injury Scale, a uniform industry scale used to quantify the type and severity of occupant injuries, and that such injuries "are known to potentially occur during airbag deployment." *Id.*

In reaching her conclusions, Dr. Yaek also criticized Yannaccone's report. She stated he did not include Stoddard's weight in his delta-V calculations, despite accounting for the extra

---

[2] Dr. Yaek concluded it was more likely for the impact to have occurred when the vehicle was traveling more than 50 miles per hour, which would have resulted in a delta-V of 1.8 to 2.8 miles per hour and an average acceleration of 3.6 to 7.9 g of deceleration over an impact duration of approximately 0.016 to 0.023 seconds at the vehicle's center of gravity. ECF 71-5, at 15, 22. In discussing Dr. Yaek's report, Balavich referred to the smaller figures. ECF 71-4, at 6–7.

6

weight earlier in his report. *Id.* at 21. She also criticized Yannaccone for ignoring the timing of the impact. *Id.* She noted deceleration is change in velocity over change in time. *Id.* According to Dr. Yaek, Yannaccone focused exclusively on change in velocity and the apparent damage to the vehicle as the comparison to airbag deployment thresholds, and he failed to provide a full comparison relative to all necessary parameters, including impact speed, the vehicle structure impacted, the timing of the impact, the object struck, and its shape and stiffness properties. *Id.*

Balavich reviewed the parties' pleadings, their discovery responses and productions, Stoddard's deposition testimony, photographs of the Outback, Stoddard's medical records, and Yannaccone's and Dr. Yaek's reports. ECF 71-4, at 35. She also inspected an exemplar vehicle and parts and consulted publicly available technical data and literature. *Id.* at 2. Balavich's report focused on the design and function of the airbag system. She discussed the history and requirements of the Federal Motor Vehicle Safety Standards ("FMVSS"), which set performance standards for vehicle occupant safety. *Id.* at 13–16. She explained the 2018 Outback used "advanced certified" airbags and was certified compliant with the dynamic crash protection requirements of the latest FMVSS rules. *Id.* at 17. Advanced certified airbags use remote censors to measure various inputs, including the acceleration time history of the vehicle, during the onset of a collision to determine crash severity. *Id.*

Balavich also discussed the 2018 Outback's airbag system sensors and control module, as well as the algorithm used to trigger deployment. *Id.* at 25–29. She explained that the crash sensing algorithm must make a deployment decision within 10 to 50 milliseconds of the initiation of the crash event. *Id.* at 28. Like Dr. Yaek, she criticized Yannaccone's report for focusing on change in velocity alone and not accounting for the crash pulse—the length of time of acceleration change over the event. *Id.* at 28–29. If deployment were based on delta-V alone, as Yannaccone's

conclusions suggest, Balavich stated "the decision would be made at the time the crash was complete, much too late to provide any restraint." *Id.* at 29. Rather, "the airbag system must predict how sever a collision is going to be within approximately the first 30 milliseconds of the crash to then command the airbags to protect the occupants." *Id.* She found that the deer impact happened in proximity to the Outback's left sub sensor for airbag deployment, and she observed displacement of several vehicle components in that area. *Id.* at 11, 28–29. She concluded the impact could have resulted in meeting the airbag system's deployment threshold. *Id.* at 29. She compared the Outback to peer vehicles and found that 36 of 43 peer vehicles had sub sensors in similar positions, suggesting those vehicles' airbags could have deployed during the same crash. *Id.* at 31–32.

Balavich also conducted a test airbag deployment using an exemplar 2018 Outback and a surrogate for Stoddard. *Id.* at 21–25. When the surrogate's hands were placed at the 10:00 and 2:00 position, the airbags did not contact the surrogate's arms or the door panel during deployment, leading Balavich to conclude Stoddard's hand and arm were located directly over the airbag cover during deployment. *Id.* at 25.

Balavich summarized her conclusions:

> The 2018 MY Subaru Outback is a reasonably safe vehicle. The front driver airbag and sensor technology was state of the art at the time the vehicle was designed, manufactured and distributed into commerce. . . . Deer-to-vehicle collisions with airbag deployment have been documented to occur. The deployment of the driver airbag in the subject collision was appropriate.

*Id.* at 34. She also noted the failure to preserve the vehicle in its post-crash state and the absence of crash data from the airbag system limited the scope of her investigation. *Id.*[3]

## II.     Standard of Review

Summary judgment is appropriate when the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To meet its burden, the party must identify "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" in support of its position. Fed. R. Civ. P. 56(c)(1)(A). The relevant inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986). The Court must "view the evidence in the light most favorable to the nonmoving party" and avoid "weigh[ing] the evidence or mak[ing] credibility determinations." *Lee v. Town of Seaboard*, 863 F.3d 323, 327 (4th Cir. 2017) (quoting *Jacobs v. N.C. Admin. Off. of the Courts*, 780 F.3d 562, 568–69 (4th Cir. 2015)) (internal quotation marks omitted). However, the Court also must abide by its "affirmative obligation . . . to prevent factually unsupported claims and defenses from

---

[3] In response to the Subaru defendants' motions, Stoddard provided a supplemental affidavit from Yannaccone. ECF 74-3. Yannaccone discussed an airbag design logic diagram that had been produced to him after he completed his report. *Id.* at 1–2. He noted the diagram was ambiguous regarding deployment thresholds, but he stated it was very unlikely a minor deer impact would exceed certain thresholds. *Id.* at 2. He also discussed the reports of Dr. Yaek and Balavich. He noted they used similar methodology—for example, both he and Dr. Yaek calculated a delta-V of approximately 2 miles per hour, and they both made assumptions about the size of the deer involved. *Id.* And he noted neither expert opined about whether the airbags' deployment was necessary to protect Stoddard or whether he would have been injured if the airbags did not deploy. *Id.*

proceeding to trial." *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993) (quoting *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987)) (internal quotation marks omitted).

If the moving party demonstrates "an absence of evidence to support the nonmoving party's case," the burden shifts to the nonmoving party to "present specific facts showing that there is a genuine issue for trial." *Humphreys & Partners Architects, L.P. v. Lessard Design, Inc.*, 790 F.3d 532, 540 (4th Cir. 2015). A factual dispute is genuine only where there is sufficient evidence to permit a reasonable jury to find in the nonmoving party's favor. *Id.*; *see also Perkins v. Int'l Paper Co.*, 936 F.3d 196, 205 (4th Cir. 2019). "To create a genuine issue for trial, 'the nonmoving party must rely on more than conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence.'" *Humphreys & Partners Architects*, 790 F.3d at 540 (quoting *Dash v. Mayweather*, 731 F.3d 303, 311 (4th Cir. 2013)).

**III.  Discussion**

Stoddard asserts negligence claims and a violation of the Maryland Consumer Protection Act. The Subaru defendants are entitled to summary judgment on all claims them.

**A.  Negligence**

For the negligence claims, the first question is which state's law applies. Federal courts sitting in diversity apply the substantive law of the forum state, including its choice-of-law rules. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496–97 (1941); *Megaro v. McCollum*, 66 F.4th 151, 159 n.4 (4th Cir. 2023). For tort claims like Stoddard's negligence claims, "Maryland adheres to the *lex loci delicti* rule," which requires the application of the substantive law of the state in which the injury occurred. *Philip Morris Inc. v. Angeletti*, 752 A.2d 200, 230–31 (Md. Ct. Spec. App. 2000) (citing *White v. King*, 223 A.2d 763 (Md. 1966)). Here, the accident occurred in Wisconsin, and that is where Stoddard suffered his injuries.

Stoddard makes several off-base arguments for the application of Maryland law, none of which is persuasive. He argues the Court has personal jurisdiction over the Subaru defendants because of their contacts with Maryland. That inquiry is wholly separate from the issue of choice-of-law. He also argues he is a Maryland resident and made his rental reservation while in Maryland. That may be true, but the relevant event for purposes of Maryland's choice-of-law rule is the accident that caused the injury he suffered. Stoddard does not dispute that the accident that caused his injuries—the damage to his hand resulting from the deployment of the airbags—occurred in Wisconsin, where he struck a deer while driving.[4] Wisconsin law applies to Stoddard's negligence claims. *See Bennie v. Gen. Motors*, No. DKC-06-1182, 2007 WL 9747424, at *4 (D. Md. Aug. 9, 2007) ("In this [products liability] case, the air bag deployed in Virginia, and so Virginia substantive law applies to Plaintiff's claims."), *aff'd*, 296 F. App'x 301 (4th Cir. 2008) (unpublished per curiam).

To establish a claim based on negligence, a plaintiff must prove: "(1) the existence of a duty of care on the part of the defendant, (2) a breach of that duty of care, (3) a causal connection between the defendant's breach of the duty of care and the plaintiff's injury, and (4) actual loss or damage resulting from the breach." *Hoida, Inc. v. M & I Midstate Bank*, 717 N.W.2d 17, 27 (Wis. 2006). In a negligence action based on a defective product, the plaintiff must, of course, establish the product was in fact defective. *Morden v. Cont'l AG*, 611 N.W.2d 659, 673 (Wis. 2000). "Wisconsin cases have discussed three categories of product defects—manufacturing defects,

---

[4] Stoddard curiously argues, without citation to authority, that "the place where the failure to disclose and/or warn occurs could be determined to be the principal place of business of the subject defendant." ECF 74, at 6. Even if that were the law, for the reasons explained below, Stoddard has not offered evidence of any misrepresentation or actionable omission by the Subaru defendants.

11

design defects, and defects based on a failure to adequately warn." *Godoy ex rel. Gramling v. E.I. du Pont de Nemours & Co.*, 768 N.W.2d 674, 683 (Wis. 2009).

> A product has a manufacturing defect when it deviates from the manufacturer's specifications, and that deviation causes it to be unreasonably dangerous. A product has a design defect when the design itself is the cause of the unreasonable danger. Finally, a product is defective based on a failure to adequately warn when an intended use of the product is dangerous, but the manufacturer did not provide sufficient warning or instruction.

*Id.* at 683–84.

In his amended complaint, Stoddard alleged several potential design defects—for example, overpowered deployment, improper tethering to prevent errant deployment, improper deflation venting, and imprecise deployment thresholds—and the possibility of a manufacturing defect. ECF 45, ¶¶ 23–24. He also alleged the defendants failed to warn him about the "unreasonably dangerous and defective condition" in the vehicle's airbag system. *Id.* ¶ 24. The Subaru defendants argue that, with or without Yannaccone's testimony, Stoddard has not produced any evidence of a defect and they are, therefore, entitled to judgment as a matter of law on the negligence claims.

Stoddard's case theory is ambivalent as to the precise defect in the Outback's airbag system. He starts from the premise that the collision with the deer was minor and posed a minor risk of injury to him. That premise, he argues, is supported by Yannaccone's assessment of the collision, which was based on the experts' comparison of the Outback's estimated delta-V after the impact (approximately 2 mph) against the figures provided in the Outback's manual (12 to 19 mph). Based on that assessment, Stoddard asserts the airbags should not have deployed. In his view, the fact that it did deploy indicates either a design defect—the system was designed to deploy in what was an obvious no-deploy situation—or a manufacturing defect that caused deployment despite the system's design. In either case, he argues, the Subaru defendants had a duty to warn

12

him that the airbags could deploy during minor collisions of the kind he experienced. He further argues that, while Yannaccone's testimony would assist a factfinder, his own lay testimony and the post-crash photographs of the Outback are sufficient to establish that the airbags were defective.

The parties dispute whether Stoddard can establish a defect in the airbags without expert testimony. Wisconsin courts have not addressed whether, under that state's law, expert testimony on an airbag defect is required. As a general matter, courts applying Wisconsin law determine "[w]hether expert testimony is required in a given situation . . . on a case-by-case basis." *Robinson v. City of W. Allis*, 619 N.W.2d 692, 700 (Wis. 2000) (quoting *Netzel v. State Sand & Gravel Co.*, 186 N.W.2d 258, 261 (Wis. 1971)). Wisconsin courts have "recognized that certain kinds of evidence are difficult for jurors to evaluate without the benefit of expert testimony." *Weiss v. United Fire & Cas. Co.*, 541 N.W.2d 753, 757 (Wis. 1995). "Expert testimony is often required when 'unusually complex or esoteric' issues are before the jury because it serves to assist the trier of fact." *Racine Cnty. v. Oracular Milwaukee, Inc.*, 781 N.W.2d 88, 96 (Wis. 2010) (quoting *White v. Leeder*, 440 N.W.2d 557, 562 (Wis. 1989)). Examples of complex or esoteric issues, outside the medical context, that require expert testimony include how "disease could be transmitted" between cows, *Wilson v. Tuxen*, 754 N.W.2d 220, 228 (Wis. 2008), whether a warehouse owner was contributorily negligent in continuing to load an automated storage system despite problems with its construction, *Indus. Risk Insurers v. Am. Eng'g Testing, Inc.*, 769 N.W.2d 82, 105 (Wis. Ct. App. 2009), and whether an attorney's conduct constitutes legal malpractice, *Helmbrecht v. St. Paul Ins. Co.*, 362 N.W.2d 118, 128 (Wis. 1985). To be sure, under Wisconsin law, requiring expert testimony is an "extraordinary step." *Weiss*, 541 N.W.2d at 757. When it is required, the failure to produce it can warrant summary judgment. *See Pinter v. Vill. of*

*Stetsonville*, 929 N.W.2d 547, 559 (Wis. 2019) (affirming circuit court's decision to grant summary judgment when the plaintiff failed to produce expert testimony on causation).

Without any on-point case applying Wisconsin law, the parties have cited cases applying the law of other states.  The Subaru defendants cite several cases that held expert testimony was required under Puerto Rico, Massachusetts, and West Virginia law to establish a design or manufacturing defect in an airbag system.  *See Quintana-Ruiz v. Hyundai Motor Corp.*, 303 F.3d 62, 77 (1st Cir. 2002) (requiring expert testimony under Puerto Rico law because "minimum safety standards for air bags are not within the common knowledge of lay jurors"); *Alves v. Mazda Motor of Am., Inc.*, 448 F. Supp. 2d 285, 297 (D. Mass. 2006) (applying Massachusetts law and stating "[a]ir bag systems are so complex that a plaintiff must introduce expert testimony to prove a defective design"); *Crawford v. Gen. Motors Corp.*, No. 506CV62, 2007 WL 1960611, at *3 (N.D.W. Va. July 2, 2007) (collecting cases and holding under West Virginia law "expert testimony is required . . . because the issue of whether an airbag was defectively designed or manufactured is well beyond the understanding of the average layman").

Stoddard cites several cases he claims hold expert testimony is not required to establish an airbag defect, but they do not support that broad proposition.  In all the cited cases involving defective airbag claims, the plaintiffs challenged the failure to deploy during an accident; none argued the airbags should not have deployed upon impact.  For that reason alone, the cases are distinguishable.  But even beyond that distinction, the cases do not support Stoddard's position.  In *Michael v. General Motors LLC*, the plaintiff alleged that his General Motors car was defective because the "car's airbag failed to deploy and the seatbelt failed to restrain him" when he crashed the vehicle, thereby aggravating his injuries.  790 F. App'x 275, 276 (2d Cir. 2019).  The plaintiff argued that, under New York law, he was not required to produce expert testimony to prove the

airbag was defective. *Id.* at 277. But the Second Circuit did not reach that question because the plaintiff's claim failed for the separate reason that he "did not offer *any* evidence to show" the airbag's failure to deploy aggravated his injuries. *Id.* (emphasis original). In *Bensenberg v. FCA US LLC*, the estate of Donna Bensenberg sued the manufacturer of Bensenberg's car because the car's airbags failed to deploy when she crashed at a speed somewhere between 45 and 65 miles per hour. 31 F.4th 529, 533 (7th Cir. 2022). The estate proffered an expert in accident reconstruction, kinematics, and the biomechanical analysis of personal injury accidents, who opined on the estimated speed of the accident, but the estate offered no expert on whether the airbag system itself was defective. *Id.* at 533–34. The Seventh Circuit noted that "in the usual case, expert testimony is required to establish that a product presents an unreasonable danger as a result of a defect," but because of a specific aspect of Illinois state law—not found in Wisconsin— the estate could prove its product defect claim without expert testimony. 31 F.4th 529, 535–36 (7th Cir. 2022). In *Fleck v. General Motors LLC*, the question was whether the plaintiff—who did produce expert testimony on the airbag defect—was required, under Oklahoma law, also to produce expert testimony on the causal connection between the defect and his injury. 154 F. Supp. 3d 30, 35 (S.D.N.Y. 2015). Here, unlike the plaintiff in *Fleck*, Stoddard has not produced any expert testimony on a defect. In *Cansler v. Mills*, the Indiana Court of Appeals did not require expert testimony explaining why airbags failed to deploy when the plaintiff was travelling at "45 to 50 mph." 765 N.E. 2d 698, 706–07 (Ind. Ct. App. 2002). The court explained that, under Indiana law, the plaintiff submitted sufficient evidence to support an inference the airbags were defective because they "did not deploy despite the presence of all the necessary elements outlined in the Owner's Manual." *Id.* That principle, even if it were based in Wisconsin law, does not apply here because Stoddard claims the defect is in the deployment, not the failure to deploy in

accordance with the owner's manual. Finally, in *Silvestri v. General Motors Corporation*, the plaintiff sued General Motors because the airbags in his Chevrolet did not deploy when he crashed while going 72 miles per hour. 210 F.3d 240, 242 (4th Cir. 2000). The Fourth Circuit held that, under New York law, a plaintiff can establish a product was defective using circumstantial evidence demonstrating the product did not work as intended. *Id.* at 243–44. Given the evidence that the airbags did not deploy at 72 miles per hour and that the impact's force was substantially higher than the manual's advertised range for airbag deployment, expert testimony was not necessary to establish the airbags were defective. *Id.* at 245. This unique aspect of New York law does not apply here, and even if it did, Stoddard has not produced sufficient evidence to make out even a circumstantial case that the airbags did not work as intended.[5]

Returning to the applicable state law, the Court finds that Wisconsin law requires expert testimony to prove the product defect in this case because whether the airbags should or should not have deployed when the Subaru Outback hit a deer at approximately 50 mph concerns an "unusually complex" and "esoteric" issue. *See Racine Cnty.*, 781 N.W.2d at 96. As Balavich's report explains (and Stoddard does not dispute), airbag systems are highly complex and technical and make deployment decisions within fractions of a second after impact. Airbags involve numerous components, sensors, and algorithms that are beyond the ken of a layperson. The intricacy of modern airbag systems—coupled with Stoddard's novel theory that the airbags were defective because they deployed when his car struck a deer at approximately 50 mph—requires

---

[5] Stoddard also cites a case that did not involve airbags but is similarly unhelpful to him. In *Watson v. Sunbeam Corporation*, 816 F. Supp. 384 (D. Md. 1993), this court, applying Maryland law, held that the plaintiffs did not need an expert to prove a heating blanket was defective if they could show it was "involved in an accident and if all other possible causes of the accident are eliminated, the inference is almost inescapable that the product is defective." *Id.* at 389. *Watson*'s unique facts are not analogous to this case. Not even Stoddard contends that the conclusion that the airbags were defective is inescapable.

the explanation of an expert with specialized knowledge of how airbags work before a jury may find the airbags were defectively designed or manufactured. Jurors would not only benefit from expert testimony on why the airbags should not have deployed, but they would have a very difficult time deciding liability without it. Stoddard cannot prove a defect merely through lay testimony and post-crash photos, as he proposes to do.

Turning, then, to Stoddard's proposed expert testimony, the Court finds that Yannaccone did not identify a specific design or manufacturing defect. Indeed, he expressly denied doing so. He stated he could not "comment on the design aspects for this specific incident or if this incident is such that deployment would not be expected or should not occur if the system performed in accordance with the Subaru design requirements." ECF 71-1, at 11. Because he lacked information about the system's design and could not access the vehicle, he could not "rule out the possibility of this occurrence being caused by a malfunction, manufacturing defect, design defect or some other combination of these factors." *Id.* at 14. At his deposition, he repeated that he had "no information about what the intent of this design was," and "without knowing anything about the design," he could not say whether the system complied with that design. ECF 71-3, at 29. He further confirmed that he did not "know specifically why this airbag deployed," including whether it was a "commanded deployment" or whether "there may have been some other issue going on." *Id.* at 30; *see also id.* at 33. Given this testimony, it is no surprise the expert could not identify the

applicable standard of care. *Id.* at 34 (stating he could not specify "any standard or regulation that was violated in any way related to this vehicle or accident[.]").[6]

Without expert testimony that the airbags were defective, Balavich's opinions that there were no defects is undisputed. Balavich opined that placement of the 2018 Outback's airbag sensors were "consistent with industry practice" based on her study of peer vehicles. ECF 71-4, at 30. She found the airbag deployment had resulted in injuries "well below" the maximum allowable injury limits for such vehicles and concluded that the Outback "is a reasonably safe vehicle" with a state-of-the-art airbag system and sensor technology that was compliant with the applicable FMVSS. *Id.* at 32–33.

On the record before the Court, there is no genuine dispute of material fact that the Outback's airbag system was reasonably safe and not defectively designed or manufactured. Without any identifiable defect, there is no genuine dispute of material fact that the Subaru defendants had no duty to warn Stoddard about a defective condition. The Subaru defendants are entitled to summary judgment on the negligence claims.

### B. Maryland Consumer Protection Act

Stoddard alleges the Subaru defendants violated the MCPA when they unfairly represented the Outback "as fit for use" and omitted that it "exposed [him] to substantial and serious injury,

---

[6] The Court does not consider Yannaccone's affidavit, ECF 74-3. The affidavit was submitted on August 29, 2022. Rebuttal expert disclosures were due by June 21, 2021, and discovery closed on December 30, 2021. *See* ECF 27 & 64. If a party does not provide its rebuttal expert disclosures by the deadline set by the court, then "the party is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). The untimely submission of Yannaccone's rebuttal affidavit is neither substantially justified nor harmless. Stoddard did not indicate that he needed more time to review the evidence or prepare a rebuttal. And, as a result of his delay, the Subaru defendants have not been able to probe Yannaccone's new opinions or allow their experts to respond. Even if considered, the affidavit does not identify a defect in the airbag system.

death and/or the risk thereof, because it actually contained unsafe airbags." ECF 45, ¶ 33. The MCPA prohibits "unfair or deceptive trade practices," including "any . . . [f]alse . . . or misleading oral or written statement . . . which has the capacity, tendency, or effect of deceiving or misleading consumers" and "any . . . [f]ailure to state a material fact if the failure deceives or tends to deceive." Md. Code Ann., Com. Law § 13–301(1), (3). A consumer claiming a violation of the MCPA must establish "(1) an unfair or deceptive practice or misrepresentation that is (2) relied upon, and (3) causes them actual injury." *Stewart v. Bierman*, 859 F. Supp. 2d 754, 768 (D. Md. 2012) (citing *Lloyd v. Gen. Motors Corp.*, 916 A.2d 257, 277 (Md. 2007)). To establish reliance, a consumer must show "the misrepresentation substantially induces the consumer's choice." *Currie v. Wells Fargo Bank, N.A.*, 950 F. Supp. 2d 788, 796 (D. Md. 2013) (citing *Nails v. S & R, Inc.*, 639 A.2d 660, 669–70 (Md. 1994)); *see also Bank of Am., N.A. v. Jill P. Mitchell Living Tr.*, 822 F. Supp. 2d 505, 534–35 (D. Md. 2011) (expressing similar standard for material omissions).

Stoddard has not identified any misrepresentation by the Subaru defendants. He did not review the vehicle's manual or recall seeing any advertisements for it. To the extent he claims the Subaru defendants omitted information about the defective design or manufacture of the airbag system, he has not offered evidence that the system was defective. Even if he had identified an actionable misrepresentation or omission, he cannot prove reliance because he testified that he did not choose the 2018 Outback or know he would be given one until it was assigned to him at the rental car office. At that time, he did not ask about the vehicle's safety.[7] And while he selected the general type of vehicle he would receive when he made his reservation, he testified that he

---

[7] Stoddard argues the Subaru defendants had an agency relationship with Hertz and Overland West, such that any statements by the rental entities are imputed to the Subaru defendants. But he does not provide any evidence to support an agency relationship or identify any misrepresentations or omissions by Hertz or Overland West on which he relied.

considered only the "price of the vehicle, the duration [he would need the vehicle], and the type of vehicle" he wanted—not any statements by the Subaru defendants or any information about the vehicle's safety profile. *See* ECF 72-4, at 12.

The Court finds no genuine dispute of material fact that Stoddard did not substantially rely on any misrepresentation or omission of material fact by the Subaru defendants. The motion for summary judgment is granted as to the MCPA claim.[8]

### C. Motion to Exclude Yannaccone's Testimony

The Subaru defendants challenge the admissibility of Yannaccone's testimony under Rule 702 of the Federal Rules of Evidence. The Court need not address their arguments because it finds Stoddard's claims do not survive summary judgment even with the support of Yannaccone's report and opinions.

### IV. Conclusion

The motion for summary judgment is granted. The motion to exclude Yannaccone's testimony is denied as moot. A separate order follows.

Date: September 28, 2023

Deborah L. Boardman
United States District Judge

---

[8] The Subaru defendants also argue the MCPA claim fails as a matter of law because (1) Maryland's choice-of-law rules require the application of Wisconsin law to the claim, and (2) the MCPA, by its terms, does not reach conduct that occurred outside of Maryland. Because the MCPA claim fails for other reasons, the Court need not reach these arguments. However, the Court notes the MCPA claim is statutory and, thus, not necessarily subject to Maryland's *lex loci delicti* rule for tort claims.